**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHIRLEY FOLMAR,**<br><br>**PLAINTIFF,**<br>**v.**<br><br>**JMP STATISTICAL DISCOVERY LLC,**<br><br>**DEFENDANT.** | **Civil Action No.:** 4:26-CV-00716<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

Plaintiff Shirley Folmar, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages, punitive damages, and other relief on behalf of Plaintiff Shirley Folmar (hereinafter "Ms. Folmar" or "Plaintiff"), a former employee of JMP Statistical Discovery LLC (hereinafter "JMP" or "Defendant"). Ms. Folmar has been harmed by Defendant's discrimination on the basis of her sex and disabilities or because Defendant perceived Plaintiff to be disabled, and by Defendant's retaliation against Plaintiff for complaining about harassment and discrimination, culminating in her wrongful termination on August 6, 2025.

2. This action is filed pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C § 2000(e) et seq. ("Title VII"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.

## JURISDICTION

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims alleged herein pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On December 16, 2025, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On December 22, 2025, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

## VENUE

7. This action properly lies in the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Middle District of Pennsylvania because significant activities associated with the claims alleged took place in this judicial district, Plaintiff

---

[1] It has been less than one year since Plaintiff dual-filed her Charge of Discrimination as a Complaint with the PHRC. Plaintiff will seek to amend her Complaint in this matter once it has been greater than one year since her dual-filing and she has exhausted her administrative remedy with respect to her claims brought pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

performed her work for Defendant in this judicial district, Plaintiff was terminated in this judicial district, and the claims arose in this judicial district.

## PARTIES

9. Plaintiff Shirley Folmar is an adult female citizen and resident of State College, Pennsylvania and the United States of America.

10. Ms. Folmar is a qualified individual with disabilities within the meaning of the ADA.

11. Ms. Folmar suffers from multiple sclerosis – a disability within the meaning of the ADA.

12. Ms. Folmar also suffers from back pain relating to a herniated cervical disc with severe stenosis and multiple herniated thoracic discs.

13. Ms. Folmar's disabilities affect major bodily functions and/or substantially limit one or more major life activities.

14. Defendant JMP is a software company with a location at 920 SAS Campus Drive, Cary NC 27513.

15. Defendant JMP is a subsidiary of SAS Institute, a developer of analytics and artificial intelligence software.

16. At all relevant times, Defendant JMP is and has been an employer employing more than five hundred (500) employees.

17. At all relevant times, employees of Defendant JMP acted as agents and servants for Defendant JMP.

18. At all relevant times, employees of Defendant JMP were acting within the scope of their authority and in the course of employment under the direct control of Defendant JMP.

19. At all times material hereto, Defendant JMP acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant JMP and in furtherance of Defendant JMP's business.

20. This cause of action arose out of transactions or occurrences that took place in whole or in part in Centre County, Pennsylvania.

21. Plaintiff worked remotely for Defendant JMP from State College, Pennsylvania.

22. Defendant conducts substantial business within Centre County, Pennsylvania.

23. This Honorable Court has personal jurisdiction over the Defendant.

## FACTS

24. On or about November 1, 2022, Ms. Folmar began her employment with JMP as an Inside Sales Representative.

25. During her employment with JMP, Ms. Folmar excelled in her position and performed her duties in an excellent and dedicated manner and was promoted to Senior Inside Sales Representative.

26. Despite her loyalty and consistent performance, Ms. Folmar was subjected to discrimination and harassment on the basis of her sex and disabilities, and retaliation for her complaints about discrimination and harassment.

27. Ms. Folmar suffers from multiple sclerosis, back pain relating to a herniated cervical disc with severe stenosis and multiple herniated thoracic discs, and disclosed her conditions to JMP, including in connection with informing JMP that she took prescription medication for her disabilities.

28. On July 20, 2025, Ms. Folmar travelled to San Diego, CA for work, to attend the JMP Sales Mid-Year event.

29. On July 21, 2025, Ms. Folmar attended a job-related dinner event where alcohol was served.

30. Specifically, Ms. Folmar attended an event that began with a 2-hour bar reception at the hotel, followed by a dinner event on a yacht.

31. Ms. Folmar was not aware that mixing alcohol with her prescription medication would have a deleterious effect, and experienced alcohol-induced amnesia.

32. While Ms. Folmar began to feel unwell and desired to leave the event, because the dinner event was held on a yacht, Ms. Folmar was unable to simply leave and instead had to remain at the event for hours after she began to feel unwell due to the mixing of alcohol with the mediation used to manage her disabilities.

33. The next morning, on July 22, 2025, Ms. Folmar was informed that she was being suspended from her job for allegedly disruptive behavior the prior evening. She had no recollection of the behavior she was being accused of.

34. Ms. Folmar explained to Chaneen Cummings-Kauassi ("Ms. Cummings"), a representative in JMP's Human Resources department, that the prescription medication she took for her disabilities, combined with alcohol, resulted in a memory lapse that evening. She was not previously aware of the potential side effects, and had never experienced anything like that before.

35. This information was shared with Ms. Cummings via email on July 28, 2025.

36. Although Ms. Folmar did not remember everything that occurred the prior evening, she did recall an interaction with a male colleague who persistently propositioned Ms. Folmar, in spite of her repeated refusals. She shared this recollection with Ms. Cummings also.

37. Ms. Folmar was suspended for approximately two weeks while Human Resources allegedly investigated what occurred at the dinner event, as well as Ms. Folmar's complaint of sexual harassment by a male colleague.

38. On August 6, 2025, Ms. Folmar met with Ms. Cummings via video and shortly thereafter, received an email from Ms. Cummings attaching a letter terminating Ms. Folmar's employment.

39. Later that day, Ms. Folmar received an email from Ms. Cummings stating that JMP had completed their investigation into the allegations of a male colleague persistently propositioning Ms. Folmar. Ms. Cummings would not discuss the outcome of the investigation, but stated to Ms. Folmar that the company took these allegations seriously.

40. The male colleague that Ms. Folmar complained of remains employed at JMP.

41. Given her suspension and the circumstances surrounding her termination, Ms. Folmar was subjected to harassment and discrimination on the basis of her sex and disabilities, and retaliated against for her complaints of discrimination and harassment, culminating in her wrongful termination.

42. Ms. Folmar has suffered and continues to suffer mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

43. Defendant and its employees acted with the intent of causing, or in reckless disregard of the probability that their actions would cause, Ms. Folmar severe emotional distress.

44. Ms. Folmar has suffered financial and other losses including, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit as a direct and proximate result of the actions and inactions of Defendant.

## COUNT I

**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.**

45. Plaintiff Shirley Folmar repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

46. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

47. In discriminating against and harassing Ms. Folmar because of her sex, and in retaliating against Ms. Folmar for complaining about discrimination and harassment, Defendant violated Title VII.

48. Defendant's violations were intentional and willful.

49. Defendant's violations warrant the imposition of punitive damages.

50. As a direct result of the unlawful employment practices engaged in by Defendant, Plaintiff Shirley Folmar has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

51. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT II

**The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.**

52. Plaintiff Shirley Folmar repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

53. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

54. In discriminating against Ms. Folmar on the basis of her disabilities or because Defendant perceived Ms. Folmar to be disabled, Defendant violated the ADA.

55. Said violations were intentional and willful.

56. Said violations warrant the imposition of punitive damages.

57. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Shirley Folmar has sustained loss of earnings, severe emotional and psychological distress, personal embarrassment, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

58. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

**PRAYER FOR RELIEF**

59. Plaintiff Shirley Folmar repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

WHEREFORE, Plaintiff Shirley Folmar respectfully requests that this Court enter judgment in her favor and against Defendant, and Order:

a. Appropriate equitable relief including reinstatement or front pay;

b. Defendant compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendant pay Plaintiff punitive damages;

d. Defendant pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

e. Defendant pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's reasonable attorneys' fees;

f. Plaintiff be granted any and all other remedies available pursuant to Title VII, the ADA, and/or any other applicable law; and

g. Such other and further relief as is deemed just and proper.

**JURY DEMAND**

Plaintiff hereby demands trial by jury as to all issues so triable.

*/s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA 19103

*Attorneys for Plaintiff Shirley Folmar*

Dated: March 19, 2026